Herbert D. Hamm, J.
The defendant Bantam Books, Inc., has been indicted for conspiracy in publishing and distributing “Ten North Frederick” written by the defendant John O ’Hara, and the defendant William Carr has also been indicted for distributing the book. Bantam Books, Inc., and William Carr move separately to inspect the Grand Jury minutes. The two motions are treated together since they involve facts common to both.
An indictment will be set aside where the Grand Jury has acted upon evidence insufficient, although “ unexplained or uncontradicted ” (Code Crim. Pro., § 251, formerly numbered § 258), to warrant a conviction by the trial jury. A conviction for violation of section 1141 of the Penal Law based on isolated passages from “ Ten North Frederick” rather than on the publication as a whole could not be sustained. Last June in Roth v. United States (354 U. S. 476, 484, 488-489) in holding that obscenity was ‘ ‘ utterly without redeeming social importance ” and was not covered by the First Amendment, Justice Brennan drew a tight definition of obscenity: “ The early leading standard of obscenity allowed material to be judged merely by the effect of an isolated excerpt upon particularly susceptible persons. Regina v. Hicklin, [1868] L. R. 3 Q. B. 360. Some American courts adopted this standard but later decisions have rejected it and substituted this test: whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest. The Hicklin test, judging obscenity by the effect of isolated passages upon the most susceptible persons, might well encompass material legitimately treating with sex, and so it must be rejected as unconstitutionally restrictive of the freedoms of speech and press. On the other hand, the substituted standard provides safeguards adequate to withstand the charge of constitutional infirmity.”
It has long been the law in New York State also that the obscene character of a challenged publication will be determined by viewing it broadly in its entirety. In 1922 in Halsey v. New York Soc. for Suppression of Vice (234 N. Y. 1, 4) the Court of Appeals stated: “It [Mademoiselle de Maupin] contains many paragraphs, however, which taken by themselves are *1066 undoubtedly vulgar and indecent. No work may be judged from a selection of such paragraphs alone. Printed by themselves they might, as a matter of law, come within the prohibition of the statute. So might a similar selection from Aristophanes or Chaucer or Boccaccio or even from the Bible. The book, however, must be considered broadly as a whole.” More recently in Brown v. Kingsley Books (1 N Y 2d 177, 188-189, affd. 354 U. S. 436) Judge Fuld had occasion to state: “I assume, of course, that the statutory proscription of obscenity .will be applied with great care and selectivity so as not to interfere with the circulation of legitimate works of literature; but the libidinous character of a challenged work will be determined by viewing it ‘ broadly as a whole ’ (Halsey v. New York Soc. for Suppression of Vice, 234 N. Y. 1, 4-5), with reference to 6 its dominant effect ’, ‘ not on any particular class, but upon all those whom it is likely to reach ’ (United States v. Levine, 83 F. 2d 156, 157; United States v. One Book Called Ulysses, supra, 72 F. 2d 705, 707-708, affg. 5 F. Supp. 182); and that consideration will be given, among other factors, to ‘ the established reputation of the work in the estimation of approved critics, if the book is modern, and the verdict of the past, if it is ancient’. (United States v. One Book Called Ulysses, supra, 72 F. 2d 705, 708.)”
The moving affidavit as to each defendant supplies extrinsic proof that, at most, only isolated passages of the book were .submitted to the Grand Jury which returned the indictment.
In People v. Howell (3 N Y 2d 672, 675) Judge Van Voobhis stated: “Although the denial of a motion to dismiss an indictment upon the foregoing ground [that the evidence submitted before the Grand Jury was legally insufficient to constitute a crime] is reviewable in this court on appeal from the conviction (People v. Nitzberg, 289 N. Y. 523; People v. Sexton, 187 N. Y. 495; People v. Glen, 173 N. Y. 395), a motion to dismiss an indictment for insufficiency of the evidence before the Grand Jury, as Justice Valente pointed out at the Appellate Division, is granted only upon a clear showing to that effect, in view of the presumption that an indictment is based on legal and sufficient evidence (People v. Glen, 173 N. Y. 395, supra; People v. Sexton, 187 N. Y. 495, supra; People v. Sweeney, 213 N. Y. 37). That degree of proof, as Justice Valente also pointed out, is .not necessary on a motion for inspection of the Grand Jury minutes in order to lay a foundation for dismissal of an indictment on this ground. It is enough to justify the granting of ,a motion for inspection if facts be shown from which there is reason to believe that the evidence before the Grand Jury is *1067 insufficient or illegal (cf. People ex rel. Lemon v. Supreme Court, 245 N. Y. 24, 31, per Cardozo, Ch. J.), On such a motion the judge is authorized to read the minutes of the Grand Jury.”
I have read the minutes of the Grand Jury. The motions are granted. Submit orders to Troy on three days’ notice.